**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212-643-0500
Email: *mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10158
San Juan, Puerto Rico 00907
Tel: (215) 789-4462
Email: *klaukaitis@laukaitislaw.com*

*Counsel for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN FARLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DRISCOLL'S, INC.,<br><br>Defendant. | Case No. 26-cv-5950<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Farley ("Plaintiff") brings this Class Action Complaint in Plaintiff's individual capacity as well as on behalf of all others similarly situated against Driscoll's, Inc. ("Driscoll's" or "Defendant"), and alleges, upon personal knowledge as to Plaintiff's own actions, Plaintiff's counsel's investigation, and upon information and good faith belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This consumer protection class action arises from Driscoll's marketing, labeling, and sale of strawberries ("Strawberries")[1] that it represents to consumers as being produced "subject to rigorous food safety and quality standards" while failing to disclose the presence, risk of, and/or the use of persistent, fluorinated pesticide compounds associated with so-called "forever chemicals" and PFAS-related compounds. At the same time, Driscoll's ran an environmentally friendly campaign—greenwashing its true farming and manufacturing practices, which included forever chemicals known to be extraordinarily difficult to clean up and break down and accumulate in the environment and living organisms, including humans.

2. Driscoll's is a California-based seller and marketer of fresh Strawberries and other berries and is the world's largest berry producer, "[w]ith more than 100 years of farming heritage and hundreds of independent growers around the world."[2]

3. Driscoll's markets a variety of berry products, including blueberries, raspberries, blackberries, and its Strawberries, throughout the United States and internationally through a network of licensed growers.

4. Driscoll's does not market its Strawberries as a mere agricultural commodity.

---

[1] This action concerns Defendant's conventional strawberry products ("Strawberries") and does not challenge Defendant's separately marketed organic strawberry products.

[2] *See* https://www.linkedin.com/company/driscoll's (last accessed on September 14, 2026).

Instead, Driscoll's has cultivated a premium brand identity centered around quality, safety, scientific innovation, and rigorous production and food-safety standards. [3]

5. According to Driscoll's, food safety is its "single most important focus" after taste, and Driscoll's promotes extensive oversight measures, including pesticide controls, testing protocols, third-party audits, water sampling, residue testing, and environmental monitoring designed to ensure the safety and quality of its berries.[4]

6. Driscoll's prominently advertises its Strawberries as "Only the Finest Berries," a trademarked slogan displayed on its bright-yellow packaging and throughout its marketing materials.[5] A true and correct copy of the Strawberries' packaging label is pictured below:




7. Driscoll's also represents that its berries "are grown with great care by [its] farmers,

[3] Driscoll's, *Driscoll's Food Safety Program*, https://www.driscolls.com/about/our-practices/food-safety (last accessed September 14, 2026); Driscoll's, *How We Grow Our Berries*, https://www.driscolls.com/about/our-practices/how-we-grow (last accessed September 14, 2026).

[4] Driscoll's, *Our Practices*, https://www.driscolls.com/about/Our-Practices (last accessed September 14, 2026); Driscoll's, *Driscoll's Food Safety Program*, *supra* note 3; Driscoll's, *Food Safety: Our Promise, Rooted in Real Care*, https://www.driscolls.com/Food-Safety (last accessed September 14, 2026).

[5] Driscoll's, *Strawberry Sweetness Worth Sharing*, https://www.driscolls.com/Berries/Strawberries (last accessed September 14, 2026).

hand-picked, then carefully packed in the field to ship, all to ensure freshness and quality"[6] and that "[a]ll independent farmers around the world who grow Driscoll's berries must adhere to local and federal laws applicable to that growing region as well as country-specific import and export regulations."[7]

8. When individuals purchase Driscoll's Strawberries, the safety, quality, purity, pesticide practices, wholesomeness, and environmental characteristics of the fresh fruit are material components of the decision to purchase the product. Indeed, a 2026 Pew Research survey found that 93% of consumers are concerned about the presence of harmful chemicals—such as PFAS—in their food, and that 83% want companies to provide more information about chemicals

[6] *See* https://www.driscolls.com/about/Our-Practices (last accessed September 14, 2026).
[7] Driscoll's, *Food Safety Standards for Berries*, *supra* note 3.

in their products so that they can make informed choices.[8]

Figure 1

**Most U.S. Adults Are Concerned About Harmful Chemicals in the Environment, Consumer Products**

Survey responses by exposure source




Notes: Respondents were asked, "Some chemicals may harm health. How concerned are you, if at all, about you or your loved ones being exposed to these chemicals in each of the following?" The margin of error for the survey is plus or minus 1.39 percentage points at the 95% confidence level.

© 2026 The Pew Charitable Trusts




Notes: Respondents were instructed, "The following questions ask you to choose between two statements. Please choose the statement that best describes what you think, even if neither describes you perfectly." The margin of error for the survey is plus or minus 1.39 percentage points at the 95% confidence level.

© 2026 The Pew Charitable Trusts

9. Sustainability representations are likewise material to reasonable consumers. A 2024 PricewaterhouseCoopers LLP survey found that consumers would spend 9.7% more, on average,

[8] Jennifer McPartland, *Americans Are Concerned About Harmful Chemicals in Food, Water and Everyday Products*, Pew Research Ctr. (Feb. 26, 2026), https://www.pew.org/en/research-and-analysis/articles/2026/02/26/americans-are-concerned-about-harmful-chemicals-in-food-water-and-everyday-products.

on sustainably produced or sourced goods, despite inflation and cost-of-living concerns.[9] Likewise, a survey conducted by NIQ found that 77% of respondents would stop purchasing from a brand if it were found guilty of greenwashing.[10]




10. These consumer preferences make Driscoll's representations concerning food safety and quality especially material. Driscoll's has used these representations to market conventional Strawberries that, according to independent testing publicly reported in May 2026, contained multiple pesticide residues, including fluorinated pesticide compounds characterized as PFAS-related or "forever" pesticides.[11]

11. Plaintiff and a class of similarly situated consumers purchased Driscoll's conventional Strawberries relying on Driscoll's representations concerning safety, quality,

---

[9] PricewaterhouseCoopers LLP, *Consumers Willing to Pay 9.7% Sustainability Premium, Even as Cost-of-Living and Inflationary Concerns Weigh: PwC 2024 Voice of the Consumer Survey* (May 15, 2024), https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html.

[10] NIQ, *How to Turn Green Consumer Intentions into Sustainable Actions* (Sept. 26, 2023), https://nielseniq.com/global/en/insights/report/2023/how-to-turn-green-consumer-intentions-into-sustainable-actions/.

[11] Leah Segedie, *Mamavation Finds PFAS-Laden Pesticides in Driscoll's Strawberries*, Mamavation (May 12, 2026), https://mamavation.com/food/pfas-pesticides-driscolls-strawberries.html.

rigorous standards, and/or sustainability without knowing of the alleged presence, use, or risk of PFAS-related persistent, fluorinated pesticide compounds.

12. Plaintiff, like all reasonable consumers, relied on Driscoll's representations and omissions to Plaintiff's detriment and suffered injury in the form of the purchase price and/or price premium; indeed, had Plaintiff known the allegedly omitted facts concerning PFAS-related compounds, Plaintiff would not have purchased the Strawberries or would have paid substantially less for them.

13. Now, Plaintiff brings this action against Driscoll's, Inc., alleging violations of New York's General Business Law §§ 349 & 350, and unjust enrichment on the part of Driscoll's.

## JURISDICTION AND VENUE

14. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), which confers subject matter jurisdiction upon this Court because: (1) this is a class action involving more than 100 class members and at least one class member is a citizen of a state different from Driscoll's; and (2) the amount in controversy is in excess of $5,000,000.00, exclusive of interest and costs.

15. This Court has personal jurisdiction over Driscoll's because Driscoll's conducts and transacts business in the State of New York, and contracts to supply goods within the State of New York, such that they have continuous and systematic contacts with the State of New York.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**THE PARTIES Name: John Farley**

17. Plaintiff John Farley is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in Shirley, New York. Plaintiff purchased Driscoll's conventional Strawberries in local grocery stores in New York during the Class Period. Prior to making the purchases, Plaintiff saw and relied on Driscoll's product representations emphasizing the quality, safety, rigorous standards, and trustworthiness associated with its Strawberries and brand. Through these representations, Driscoll's conveyed that the Strawberries were suitable for consumption and met reasonable consumer expectations regarding safety and quality. Consistent with those representations and partial disclosures, Plaintiff believed that Driscoll's Strawberries were free from undisclosed contaminants and substances that reasonable consumers seek to avoid. Plaintiff did not expect that the Strawberries would contain or be produced using PFAS-related compounds or persistent, fluorinated pesticides. Had Driscoll's disclosed these facts, Plaintiff would not have purchased the Strawberries or would have paid substantially less for them. He would purchase the Strawberries again if they did not contain pesticide residues, including fluorinated pesticide compounds characterized as PFAS-related or "forever" chemicals.

18. Defendant Driscoll's, Inc. is a California corporation with its principal place of business in Watsonville, California.

19. Driscoll's manufactures and/or causes to be grown, markets, advertises, packages, distributes, and sells the Strawberries throughout the United States, including throughout New York and within this judicial District. Defendant created and/or authorized the representations, advertisements, packaging, labeling, and marketing concerning the Strawberries.

## COMMON FACTUAL ALLEGATIONS

20. Through its proprietary berry varieties, network of independent growers, packaging, branding, and distribution, Driscoll's has grown into the world's largest berry company.[12]

21. Despite its success and reputation for premium berries, Defendant has marketed its conventional Strawberries through representations concerning their safety, quality, wholesomeness, and growing and food-safety standards, while allegedly failing to disclose the presence or use of pesticide residues, including persistent, fluorinated pesticide compounds associated with PFAS.

**Driscoll's Marketing of Premium, Safe, and High-Quality Strawberries**

22. Defendant has built its brand around the quality of its berries and the standards under which they are grown. Although Driscoll's relies on independent growers, it develops proprietary berry varieties and establishes standards for berries sold under the Driscoll's name.

23. Driscoll's reinforces this premium image by representing that its Strawberries are hand-picked at peak ripeness to meet "strict quality standards," are "naturally grown," and are "never genetically modified."[13]

24. Driscoll's also represents that its independent growers are subject to food-safety standards and third-party audits covering agricultural practices, including pesticide use, while its testing programs include water sampling, residue testing, and environmental monitoring.[14]

25. These representations allow Defendant to distinguish its Strawberries from competing products and encourage consumers to associate the Driscoll's name with quality and

---

[12] Peter High, *How Driscoll's Is Turning Berries Into a Data-Driven Business*, Forbes (June 15, 2026), https://www.forbes.com/sites/peterhigh/2026/06/15/how-driscolls-is-turning-berries-into-a-data-driven-business/

[13] Driscoll's, *Strawberry Sweetness Worth Sharing*, *supra* note 5.

[14] Driscoll's, *Driscoll's Food Safety Program*, *supra* note 3; Driscoll's, *Food Safety: Our Promise, Rooted in Real Care*, *supra* note 4.

carefully controlled growing practices.

**The Strawberries and the Allegedly Undisclosed PFAS-Related Pesticide Compounds**

26. Defendant markets and sells both conventional and USDA-certified organic strawberries. This action concerns only Driscoll's conventional Strawberries.

27. Driscoll's did not disclose the alleged presence or use of PFAS-related pesticide compounds on the packaging of its conventional Strawberries.

28. In addition, a third-party wellness website initiated a laboratory test for two boxes of strawberries: one certified organic and one conventional. "The conventional box showed residues of 12 pesticides, including some containing PFAS, while the organic box showed none."[15]

29. The distinction between Defendant's conventional and organic strawberries further demonstrates that Defendant was capable of marketing and selling Strawberries cultivated under materially different pesticide-use standards while allegedly failing to adequately disclose the nature of the pesticide compounds associated with its conventional Strawberries.

30. Consumers therefore could not determine from the packaging whether the Strawberries contained, or were produced using, persistent, fluorinated pesticide compounds associated with PFAS. For that reason, "[m]any parents announced they would throw out their strawberries and never buy from Driscoll's again. After all, strawberries are supposed to be healthy, and parents feed a lot of them to their kids."[16]

31. PFAS are a large class of synthetic chemicals that are harmful to both humans and the environment.[17] Fluorine is an atomic element present in the molecular structure of PFAS.[18]

---

[15] *See, Will the pesticides in this bowl of Driscoll's strawberries kill me*, https://foodprint.org/blog/driscolls-strawberries/ (last accessed on September 14, 2026).
[16] *Id*.
[17] *See*, e.g., United States Agency for Toxic Substances & Disease Registry ("ATSDR"), *PFAS and Your Health*, https://www.atsdr.cdc.gov/pfas/about/index.html (last accessed September 14, 2026)
[18] Nat'l Inst. of Env'l Health Scis. ("NIEHS"), *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm (last accessed September 14, 2026)

PFAS are commonly known as "forever chemicals" because their strong carbon-fluorine bonds in their molecular structure make them highly resistant to degradation. Their persistence is particularly concerning because exposure to certain PFAS has been associated with serious adverse health effects, including certain cancers.

32. Exposure to certain PFAS may occur through food and other sources, and some may remain in the human body and accumulate over time.[19]

33. The following figure from the European Environment Agency ("EEA") illustrates the effects of PFAS exposure on the human body[20]:




[19] Herbert P. Susmann et al., *Dietary Habits Related to Food Packaging and Population Exposure to PFASs*, 127(10) Env't Health Persps. 107003-1 (Oct. 2019), https://ehp.niehs.nih.gov/doi/epdf/10.1289/EHP4092; National Institute of Environmental Health Sciences, *PFAS*, https://www.niehs.nih.gov/health/topics/agents/pfc (last accessed August 31, 2026)

[20] European Environment Agency, Emerging Chemical Risks in Europe — 'PFAS' (Dec. 16, 2019), *available at* https://www.eea.europa.eu/en/analysis/publications/emerging-chemical-risks-in-europe.

34. "No level of PFAS in the body is considered safe, and [PFAS chemicals] have been linked to a litany of health problems, including cancers,"[21] among them, "digestive, endocrine, respiratory, and mouth and throat cancers."[22]

35. Information concerning the presence or use of PFAS-related pesticide compounds is thus material for consumers deciding whether to purchase fresh fruit and how much to pay for it.

**Independent Testing Detected PFAS-Related Pesticide Compounds**

36. In May 2026, independent laboratory testing reportedly detected twelve pesticide residues on Driscoll's conventional Strawberries.[23]

37. Eight of the detected pesticides were characterized as PFAS or "forever pesticides", and are identified below:

a. Flonicamid

b. Fludioxonil

c. Flupyradifurone

d. Fluxapyroxad

e. Indoxacarb

f. Novaluron

g. Tetraconazole

h. TFNG[24]

[21] Jenny Blair, *Forever Chemicals Promote Cancer Cell Migration*, YALE SCH. PUB. HEALTH (Dec. 11, 2023), https://ysph.yale.edu/news-article/yale-study-forever-chemicals-promote-cancer-cell-migration/.
[22] Zara Abrams, *Study links PFAS contamination of drinking water to a range of rare cancers* (Jan. 14, 2025), https://keck.usc.edu/news/study-links-pfas-contamination-of-drinking-water-to-a-range-of-rare-cancers/; *see also* Nat'l Cancer Inst., *PFAS Exposure and Risk of Cancer*, https://dceg.cancer.gov/research/what-we-study/pfas (last accessed August 31, 2026).
[23] Leah Segedie, *Mamavation Finds PFAS-Laden Pesticides in Driscoll's Strawberries*, *supra* note 11.
[24] *Id.*

38. The testing also reportedly detected Cyprodinil, Pyrimethanil, Quinoxyfen, and Tetrahydrophthalimide ("THPI").[25]

39. Notably, the testing revealed that certain detected pesticide residues were present at levels exceeding standards established in other jurisdictions.[26]

40. However, none of the alleged pesticide residues were identified on the Strawberries' packaging, and consumers could not discover the presence of these compounds through ordinary inspection of the product.

**Driscoll's Exercises Extensive Control Over Strawberries Sold Under Its Brand**

41. Defendant does not grow all the Strawberries sold under its name. Instead, it relies on a network of independent growers to cultivate its proprietary berry varieties.

42. Nevertheless, Driscoll's exercises substantial control over the Strawberries sold under its brand. Driscoll's develops its proprietary berry varieties, makes its patented plants available to independent growers, establishes quality standards, and oversees the handling and quality inspection of Strawberries sold under Driscoll's name.[27]

43. Driscoll's also requires farms and facilities to undergo audits designed to verify compliance with established food-safety standards.[28]

44. Driscoll's further works with its independent growers by providing ongoing training, guidance, and technical support concerning food-safety practices.[29]

45. Through these measures, Driscoll's maintains oversight over the quality and food-safety practices associated with Strawberries sold under its name, notwithstanding its use of

---

[25] *Id.*
[26] *Id.*
[27] Dana Goodyear, *How Driscoll's Reinvented the Strawberry*, The New Yorker (Aug. 14, 2017), https://www.newyorker.com/magazine/2017/08/21/how-driscolls-reinvented-the-strawberry.
[28] Driscoll's, *Driscoll's Food Safety Program*, *supra* note 3.
[29] *Id.*

independent growers.[30]

46. Driscoll's also controls the consumer-facing presentation of its Strawberries through packaging and branding.[31]

47. Consumers consequently encounter and purchase the Strawberries as Driscoll's products and rely upon the quality and food-safety standards associated with the Driscoll's brand, rather than upon the identity of any individual grower.

**Driscoll's Alleged Failure to Disclose PFAS-Related Pesticide Compounds Was Materially Misleading**

48. Driscoll's knew or should have known the agricultural practices, pesticide protocols, grower requirements, and testing applicable to Strawberries sold under its brand.

49. This information was exclusively within Driscoll's and its growers' knowledge and was not available to consumers at the time of purchase.

50. Notwithstanding, Driscoll's allegedly failed to disclose the presence or use of PFAS-related pesticide compounds on the Strawberry packaging while continuing to market the Strawberries through representations concerning their quality, safety, food-safety practices, and production standards.

51. A reasonable consumer would consider the alleged presence or use of persistent PFAS-related pesticide compounds important when deciding whether to purchase the Strawberries and how much to pay for them.

52. Had Driscoll's disclosed the alleged presence or use of PFAS-related pesticide compounds, reasonable consumers, including Plaintiff, would not have purchased the Strawberries or would have paid less for them.

---

[30] Goodyear, *How Driscoll's Reinvented the Strawberry*, *supra* note 27.
[31] Driscoll's, *Our Heritage*, https://www.driscolls.com/about/heritage (last accessed September 14, 2026)

**Plaintiff Was Injured by His Purchase of the Strawberries**

53. Plaintiff purchased Driscoll's conventional Strawberries in New York on multiple occasions during the past two years.

54. In purchasing the Strawberries, Plaintiff saw and relied upon Driscoll's packaging and representations concerning the quality, safety, and standards associated with the Strawberries.

55. Plaintiff did not know that the Strawberries allegedly contained, or were produced using, PFAS-related pesticide compounds. Had Plaintiff known this information, he would not have purchased the Strawberries or would have paid substantially less for them.

56. Plaintiff therefore suffered economic injury because he paid more for the Strawberries than he otherwise would have paid and did not receive the benefit of his bargain.

## CLASS ALLEGATIONS

57. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

58. Plaintiff brings Plaintiff's claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and/or 23(b)(3) on behalf of Plaintiff and the following classes:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Strawberries for personal consumption or use.
>
> **NY Subclass:** All persons residing in New York who, during the maximum period of time permitted by law, purchased Defendant's Strawberries for personal consumption or use.

59. Excluded from the classes are government entities, Driscoll's, any entity in which Driscoll's has a controlling interest, and Driscoll's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assignees, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate

families and judicial staff.

60. Plaintiff reserves the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

61. As used herein, "Class Members" shall refer to the Nationwide Class members and all Subclasses, including Plaintiff.

62. The Class Members are properly brought, and this action should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

63. **Numerosity**. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the classes as described above who have been damaged by Driscoll's deceptive and misleading practices.

64. **Commonality**: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual members of the classes include, but are not limited to:

A. Whether Driscoll's is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Strawberries;

B. Whether Driscoll's misconduct set forth in this Complaint demonstrates that Driscoll's had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Strawberries;

C. Whether Driscoll's breached express and implied warranties relating to the Strawberries;

D. Whether Driscoll's false and misleading statements concerning its Products were likely to deceive the public;

E. Whether Driscoll's falsely advertised the Strawberries to the public;

F. Whether Plaintiff, the Nationwide Class and the NY Subclass are entitled to monetary damages under the same causes of action as the other members of the class; and

G. Whether Driscoll's was unjustly enriched by way of its deceptive advertising to the Class Members.

65. **<u>Adequacy</u>:** Plaintiff is an adequate Class and Subclass representative because his interests do not conflict with the interests of the Class Members he seeks to represent; he has a strong interest in vindicating his rights and the rights of the Class and the Subclass; he has retained counsel competent and experienced in complex class action litigation; and counsel intends to vigorously prosecute this action.

66. **<u>Predominance</u>:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual Class Members. The Class and Subclass issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Driscoll's deceptive and misleading marketing and labeling practices.

67. **<u>Superiority</u>:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a) The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c) When Defendants' liability has been adjudicated, all Class Members'

claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f) This class action will ensure uniformity of decisions among Class Members;

g) The Class and Subclass are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h) Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

i) It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Driscoll's uniform false advertising to purchase their Products.

68. Accordingly, this Class and Subclass are properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and the NY Subclass)

69. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70. Plaintiff brings this claim individually and on behalf of the NY Subclass against Driscoll's.

71. This claim is brought pursuant to the laws of the State of New York.

72. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

73. Driscoll's committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the presence of PFAS and/or PFAS-related compounds in its Strawberries.

74. Driscoll's deceptive acts and practices were directed at consumers.

75. Driscoll's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Driscoll's knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that they were purchasing Strawberries without the presence of PFAS and/or PFAS-related compounds.

76. Driscoll's knows that Strawberries free of PFAS and/or PFAS-related compounds is material to consumers. If such information were not material, Driscoll's would not market the Strawberries as in "compliance with applicable food safety laws and regulatory requirements in the markets where our berries are grown and sold."[32] As a result of its deceptive acts and practices, Driscoll's sold tens, if not hundreds of thousands of Strawberries to unsuspecting consumers across New York.

77. As a direct and proximate result of Defendant's omissions, active concealment, and other deceptive conduct, Plaintiff and members of the NY Subclass suffered injury in the form of actual damages when they purchased the Strawberries that were worth less than the price they paid and that they would not have purchased had they known the Strawberries contained (or had a material risk of containing) PFAS.

[32] Driscoll's, *Driscoll's Food Safety Program*, *supra* note 3

78. On behalf of himself and members of the NY Subclass, Plaintiff seeks to recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the NY Subclass)**

79. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the NY Subclass against Driscoll's.

81. This claim is brought pursuant to the laws of the State of New York.

82. N.Y. Gen. Bus. Law § 350 provides as follows: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

83. N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual. []

84. Driscoll's labeling and advertisements contain untrue and materially misleading statements concerning the safety practices of production of its Strawberries. By misrepresenting the true contents and the presence of PFAS and/or PFAS-related compounds in its Strawberries, Driscoll's marketing and labeling misleads a reasonable consumer.

85. Driscoll's had exclusive knowledge of the presence of PFAS and/or PFAS-related compounds in its Strawberries.

86. Driscoll's misrepresentations and omissions were material because consumers are concerned with the authenticity, quality, and safety of the Strawberries that they purchase, which includes how they were harvested.

87. As a result of Driscoll's misrepresentations and omissions, Plaintiffs and members of the NY Subclass have suffered economic injury because they would not have purchased the strawberries, or would have paid substantially less for them, if they had known that the strawberries possessed the presence or risk of PFAS and/or PFAS-related compounds.

88. Driscoll's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Strawberries were and continue to be exposed to Driscoll's material misrepresentations.

89. As a result of Driscoll's recurring, unlawful deceptive acts and practices, Plaintiff and the NY Subclass are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Driscoll's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Plaintiff, the Nationwide Class, or alternatively the NY Subclass)**

90. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

91. Plaintiff brings this claim on behalf of himself, the Nationwide Class, or alternatively the NY Subclass against Driscoll's.

92. This claim is brought pursuant to the laws of the State of New York.

93. Driscoll's conduct violated, inter alia, state and federal law by manufacturing,

advertising, marketing, and selling the Strawberries while misrepresenting and omitting material facts.

94. Driscoll's unlawful conduct as described in this Complaint allowed Driscoll's to knowingly realize substantial revenues from selling their Strawberries at the expense of, and to the detriment or impoverishment of, Plaintiff and the Class Members, and to Driscoll's benefit and enrichment. Driscoll's has thereby violated fundamental principles of justice, equity, and good conscience.

95. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Driscoll's for the Strawberries free of the presence of PFAS and/or PFAS-related compounds, which was not as Driscoll's represented it to be.

96. It is inequitable for Driscoll's to retain the benefits conferred by Plaintiff and Class Members' overpayments.

97. Plaintiff, the Nationwide Class, or alternatively the NY Subclass seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and Subclass and naming Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b) For an order declaring Driscoll's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff, the Class and the Subclass their reasonable attorney's fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 24, 2026

Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212-643-0500
Email: *mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10158
San Juan, Puerto Rico 00907
*Tel: (215) 789-4462*
Email: *klaukaitis@laukaitislaw.com*

**Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff Jennifer Harrell*